CHARLES HOWARD, as Executor, etc., of AUGUST HENRY DOERING, Deceased, Plaintiff, *v.* MARLIN-ROCKWELL CORPORATION and Another, Defendants. (Action No. 1.)

CHARLES HOWARD, as Executor, etc., of AUGUST HENRY DOERING, Deceased, Plaintiff, *v.* JAMESTOWN TELEPHONE CORPORATION and Another, Defendants. (Action No. 2.)

Supreme Court, Chemung County, August 1, 1935.

*J. John Hassett* and *N. H. Rhodes* [*Horace E. Whiteside* of counsel], for the plaintiff.

*Sayles, Flannery, Collin & Evans* [*Charles Brayton* of counsel], for the defendant Doering.

PERSONIUS, J. The plaintiff appearing specially objected that the notice of motion and moving papers were not properly served. The papers were actually received in ample time. If service was technically insufficient, we think the time of the defendant to make the motions could and should be extended. (Civ. Prac. Act, § 98; *Fiorello* v. *N. Y. Prot. Episcopal City Mission Society*, 217 App. Div. 510, 512.) The objection is denied and the order may so recite.

It appears from the complaint in action No. 1 that August Henry Doering, a resident of Missouri, died at Elmira, N. Y., May 29, 1934, leaving personal property in New York State and a will nominating the plaintiff and the defendant Oscar F. Doering co-executors; that said will was probated in Chemung county, New York, the plaintiff alone qualifying as executor. It further appears that the decedent owned stock in the defendant Marlin-Rockwell Corporation, which he gave in trust or outright to or for the benefit of residents of Elmira, N. Y.; that the plaintiff notified the defendant corporation of his appointment and demanded the transfer of the stock to him, which demand was refused.

The complaint also alleges that said will was "recently" probated in Missouri and the defendant Doering appointed executor. At the same time the probate there of a former will was revoked.

The defendant Doering took possession of the certificates representing said stock, refused to deliver the same to the plaintiff, and sold fifty shares thereof. It is alleged that there are creditors of the decedent in New York as well as legatees.

The complaint demands that the plaintiff be adjudged the owner and entitled to possession of the stock.

The complaint in action No. 2 contains substantially the same allegations as to shares of stock in the defendant Jamestown Telephone Corporation, except that the will does not specifically devise the same to New York residents.

The Surrogate's Court, Chemung county, New York, had jurisdiction to probate the will and appoint the plaintiff executor. (Surr. Ct. Act, § 45, subd. 2.) Whether the plaintiff's appointment be considered ancillary (*Matter of Van Bokkelen*, 155 Misc. 289), or original (*Matter of Bliss*, 121 id. 773, 776), the decedent's property in this State should be administered here by the plaintiff. Speaking of the estate of a non-resident, the Court of Appeals recently said in *Matter of Cornell* (267 N. Y. 456, at p. 461): " That the Surrogate's Court of New York county has jurisdiction over the New York estate of this non-resident decedent admits of no doubt." In *Baker* v. *Baker, Eccles & Co.* (242 U. S. 394) the court said (p. 401): " It is equally clear that the State which has created a corporation has such control over the transfer of its shares of stock that it may administer upon the shares of a deceased owner and tax the succession. [Citing cases.] The rule generally adopted throughout the States is that an administrator appointed in one State has no power *virtute officii* over property in another. No State need allow property of a decedent to be taken without its borders until debts due to its own citizens have been satisfied." (See, also, *Murphy* v. *Crouse*, 135 Cal. 14; 66 P. 971.) Such is the Missouri law. (*Richardson* v. *Busch*, 198 Mo. 174; 95 S. W. 894; *Troll* v. *Third National Bank*, 278 Mo. 74; 211 S. W. 545.) In *Lohman* v. *Kansas City Southern Ry. Co.* (326 Mo. 819; 33 S. W. [2d] 112) a Missouri corporation maintained a transfer office in New York city. *The deceased resided and died in New York city. His certificates were there. It was admitted that he had no debts and owed no taxes in Missouri.* Under all these circumstances, the court declined to require a transfer of the certificates to the Missouri administrator. It does not overrule *Richardson* v. *Busch* (*supra*) or *Troll* v. *Third National Bank* (*supra*). If it changed the Missouri law, it did not change the law of New York State.

Our Surrogate's Court Act applies to the trust created by the will. (§ 171.) Whether the surrogate will direct that the assets be remitted to the Missouri executor or distributed to the creditors and legatees in New York State, is in the discretion of and to be determined by the surrogate. (Surr. Ct. Act, §§ 164, 165; *Matter of Van Bokkelen*, 155 Misc. 289, 290; *Matter of Meyer*, 244 N. Y. 598; *Matter of Bliss*, 121 Misc. 773, 776; *Matter of Martin*, 255 N. Y. 359, 362; 2 Heaton Surrogates' Courts, 157 *et seq.*)

Each complaint states a cause of action *in rem* and *in personam* against the defendant corporation. Each states a cause of action *in rem* against the defendant Doering. Each demands that the plaintiff be adjudged the owner of the decedent's stock or interest in the defendant corporations. They are domestic corporations. The property involved has its situs in New York State. As a stockholder the decedent had an undivided interest in the surplus of assets over liabilities, represented by certificates. " His property, however, consists of his interest in such surplus, and these certificates for ordinary purposes represent but do not constitute his interest. * * * it has been established by many decisions that in the absence of some statutory provision the interest of a stockholder in the capital of a corporation may be regarded as property located where the corporation is organized and exists, and in that jurisdiction may be reached by appropriate proceedings." (*Holmes* v. *Camp*, 219 N. Y. 359, 367; *Rogers* v. *Guaranty Trust Co.*, 288 U. S. 123.)

Has the court jurisdiction in an action *in rem* against a foreign executor served by publication?

Section 160 of the Decedent Estate Law (formerly section 1836-a of the Code of Civil Procedure) provided that an executor or administrator duly appointed in any other State might sue or be sued in any courts of this State. This provision was repealed in 1926. Of it our Court of Appeals said: " the effect is little more than a legislative declaration of the existing rule in equity." (*Helme* v. *Buckelew*, 229 N. Y. 363, 371.) The jurisdiction of our court over foreign representatives seems to have been the same before the " brief and troublous existence " (*Wikoff* v. *Hirschel*, 258 N. Y. 28, 31) of said provision as it was during its existence and is now.

Our courts have jurisdiction of a non-resident executor or administrator in an action *in rem* involving property in this State even where process is served by publication. (*Holmes* v. *Camp*, 219 N. Y. 359; *Rogers* v. *Guaranty Trust Co.*, 288 U. S. 123, 132; *DeCoppet* v. *Cone*, 199 N. Y. 56, 61; *Squier* v. *Houghton*, 131 Misc. 129; *Crozier* v. *United States Steel Corp.*, 144 id. 727.) *Holmes* v. *Camp* (*supra*) involved a stockholder's interest in a domestic corporation. The case arose while section 1836-a of the Code of Civil Procedure was in force. After commenting thereon the court said (p. 372): " But in the next place and independent of any statute and without questioning the general rule, I regard it as established that in exceptional cases suits will be entertained against foreign administrators where it is essential to the administration of justice, *and an equity suit for the purpose of determining the ownership of property within our jurisdiction in my opinion comes within those exceptions.*" (Italics

ours.)   In *Helme* v. *Buckelew* (229 N. Y. 363), cited by the defendants, the court recognized this rule and cited *Holmes* v. *Camp* with approval.   At page 367 it said: " But even without waiver of immunity, a court of equity took jurisdiction at times over foreign representatives when it was necessary to intervene for the administration of local assets."   At page 368: " It [jurisdiction] was limited to cases where a failure of justice would follow if equity withheld relief.   Either the foreign representative by a *devastavit* or other tort had put himself in the position of an individual wrongdoer .* * * or there was a res within the jurisdiction to be disposed of or preserved.''   (Italics ours.)

If the action against the defendant Doering was purely personal, jurisdiction by publication could not be obtained.   The action against him being *in rem* and involving property having its situs in New York State, this court has jurisdiction of said defendant, both in his individual and representative capacities, notwithstanding process was served by publication.

In *Holmes* v. *Camp* (219 N. Y. 359) the complaint contained allegations leading to a personal judgment and demanded some personal relief.   Nevertheless, the court sustained service of the summons without the State.   It also refused to consider the possibility that any judgment obtained might be practically ineffective.

Motion denied, with ten dollars costs.